UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                    :

HAROLD JEAN-BAPTISTE,            :
                                      :
                     Plaintiff,    :
                                      :                   22-CV-7811 (VSB)
         -against-         :
                                      :        **OPINION & ORDER**
                                      :

UNITED STATES DEPARTMENT OF    :
JUSTICE ET AL.                 :
                                      :
                     Defendants.  :
                                      :
-------------------------------------------------------X

<u>Appearances</u>:

Harold Jean-Baptiste
Rosedale, NY
Pro Se Plaintiff

Isabella Jacqueline Kendrick
New York City Law Department
New York, NY
Counsel for Defendants

<u>VERNON S. BRODERICK, United States District Judge</u>:

        Plaintiff Harold Jean-Baptiste brings this action *pro se* against the United States

Department of Justice ("DOJ"), Attorney General Merrick B. Garland ("Garland"), Federal

Bureau of Investigations ("FBI"), Director Christopher Wray ("Wray"), and United States

Attorney for the Southern District of New York Damian Williams ("Williams") (collectively,

"Federal Defendants"); and City of New York ("NYC"), Mayor Eric Adams ("Adams"), and

Police Commissioner Keechant Sewell ("Sewell") (collectively "City Defendants," and together

with the Federal Defendants "Defendants").  Before me are Plaintiff's first motion for a

preliminary injunction, (Doc. 26), the City Defendants' motion to dismiss, (Doc. 30), Plaintiff's

motion (and revised motion) for default judgment against the Federal Defendants, (Docs. 23, 41),

Plaintiff's second motion (and revised motion) for a preliminary injunction, (Docs. 38, 39), and

Plaintiff's motion to obtain Freedom of Information Act Data, (Doc. 40).  For the reasons below,

Plaintiff's motions for preliminary injunctions are DENIED, City Defendants' motion to dismiss

is GRANTED, Plaintiff's motions for default judgment are DENIED, and Plaintiff's motion to

obtain Freedom of Information Act Data is DENIED.  Further, I sua sponte DISMISS all claims

against the Federal Defendants.

## I.   __Factual Background__[1]

Plaintiff claims that despite having a clean background, he has been "unfairly target[ed]"

for investigation by the FBI.  (Am. Complaint 11.)  Plaintiff has filed other lawsuits and

complaints for this alleged improper investigation, (*id.* 4–5), and now claims that in retaliation

for his lawsuits, the FBI is attempting to "destroy" his life in various ways, (*id.* 10).  One such

plot began on August 17, 2022, when Plaintiff went on Montway.com to arrange for his vehicle

to be transported from Florida to New York.  (*Id.* 5.)  He paid for the service over the phone and

received a receipt by email that same day.  (*Id.*)  Plaintiff loves his vehicle, has owned it for 10

years, and has inspected every inch no less than 300 times.  (*Id.*)  Prior to this incident, the

vehicle never had a tampered VIN number plate.  (*Id.*)  The vehicle was also inspected by a

---

[1] The facts and my interpretation of those facts to determine the potential legal claims being asserted are based upon my liberal interpretation of the First Amended Complaint ("Am. Complaint" or "Amended Complaint") filed by plaintiff Harold Jean-Baptiste ("Plaintiff").  (Doc. 6.)  Many of these allegations strain credulity and are implausible on their face.  Indeed, as will be discussed below, some of the allegations could be characterized as fanciful, fantastic, or delusional.  A court may dismiss a complaint, even a "sufficiently well-pleaded" one, if it contains "fanciful, fantastic, or delusional" facts.  *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)) (internal quotation marks omitted).  With this understanding, I assume that the well-pleaded allegations in the Amended Complaint are true in considering the motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

mechanic on August 18, 2022, who did not notice a tampered VIN plate. (*Id.*) Although the vehicle pickup was scheduled for August 20, 2022, it was picked up one day early. (*Id.*) Plaintiff states that this is because the "FBI monitored the plaintiff's email and phone calls to see the transaction and tampered the vehicle to setup the plaintiff for arrest" and that "this was a retaliation attempt to destroy the plaintiff['s] life." (*Id.* 5–6.) On August 23, 2022, the dispatch driver called Plaintiff to pick up his vehicle six blocks away from the scheduled drop off location. (*Id.* 6.) Upon inspection, Plaintiff noticed the vehicle "was tampered with an alternative VIN number plate, that was badly spot welded and badly painted to not be very noticeable on the vehicle, and paint flick to seem old." (*Id.*) The vehicle has a hidden active GPS system which can locate everywhere the vehicle travelled and the "vehicle was taken some place to badly spot weld the illegal VIN plate number." (*Id.*) An FBI agent was parked around the corner waiting for Plaintiff to drive the vehicle. (*Id.*) Plaintiff refused to accept the vehicle because of the tampered VIN number. (*Id.* 7.) The driver refused to provide his full name and tried to remove a motion camera from the vehicle because he was aware of the plot by the FBI. (*Id.*) Plaintiff called 911 to document the event, but the police officers refused to file a police report because they knew of the plot. (*Id.* 6.)

On September 7, 2022, Plaintiff re-applied with the New York City Police Department ("NYPD") for a handgun license. (*Id.* 8.) Plaintiff submitted all necessary documents, mailed his fingerprints, and called the office to explain that he had an urgent need for the gun permit because he was the victim of two kidnapping attempts. (*Id.* 8–9.) Plaintiff claims that the FBI monitored his calls and emails and instructed the NYPD not to process his gun license application. (*Id.* 9.)

II.     **Procedural History**

Plaintiff commenced this action by filing a complaint on September 8, 2022.  (Doc. 1.)
On September 26, 2022, Plaintiff filed the Amended Complaint with various causes of action,
alleging violations of the Second, Fourth, and Ninth Amendments, various federal civil and
criminal statutes (including the Electronic Communication Privacy Act, 42 U.S.C. § 1983, 42
U.S.C. § 1985, 42 U.S.C. § 1986, 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 511), and New
York Penal Law Sections 170.70 and 170.71.  (Am. Complaint 14.)

On October 21, 2022, Plaintiff filed Affirmations of Service for the Federal and City
Defendants.  (Docs. 14, 16, 18, 21.)   The Federal Defendants' answers were due November 1,
2021.  (*Id.*)  On January 19, 2023, Plaintiff moved for default judgment against the above-listed
defendants.  (Doc. 34.)

On November 10, 2022, Plaintiff filed his motion for a preliminary injunction requesting
that I "issue an order for NYPD to expedite the process" of Plaintiff's concealed carry license
application.  (Doc. 26, at 4.)  Defendants filed their opposition to Plaintiff's motion on December
12, 2022.  (Doc. 29.)  Plaintiff did not submit a reply in support of this motion.  On December
29, 2022, the City Defendants filed a motion to dismiss the amended complaint.  (Doc. 30.)  On
January 3, 2023, Plaintiff filed an opposition to the motion to dismiss.  (Doc. 33.)  The City
Defendants did not file a reply in support of their motion.  By letter dated March 1, 2023, the
Federal Defendants requested a *nunc pro tunc* extension to answer the amended complaint, (Doc.
35), and I granted the request over Plaintiff's objection, (Doc. 36), the following day, (Doc. 37).

On March 4, 2023, Plaintiff filed a second motion for injunctive relief.  (Doc. 38.)  Two
days later, Plaintiff filed a corrected version of the second motion for injunctive relief.  (Doc.
39.)  In the corrected second motion for injunctive relief, Plaintiff repeats the allegations of his

Amended Complaint, specifically that there is a "covert FBI order in place to do harm to the plaintiff" which includes monitoring the Plaintiff and the incident where Plaintiff's VIN was allegedly changed. (*Id.*) Plaintiff seeks an "injunction to vacate any investigation or Order for Rendition or to do harm on the Plaintiff by Department of Justice, Federal Bureau of Investigations, or any other branch of government." (*Id.*, at 1.) On March 7, 2023, Plaintiff filed a "motion to obtain Freedom of Information Act Data." (Doc. 40.) On March 8, 2023, Plaintiff filed a revised motion for default judgment. (Doc. 41.)

### III. <u>Legal Standards</u>

#### A. *Motion to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (cleaned up).  A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss.  *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008) (cleaned up).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (cleaned up).

## B. *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).  Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest."  *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).  Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory allegations.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).  In addition, "[a] court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic[]' or 'delusional.'"  *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

## C. *Preliminary Injunction*

Issuance of a preliminary injunction "is an extraordinary and drastic remedy, one that

should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (cleaned up).  The party seeking the injunction carries the burden of persuasion to demonstrate, a "(1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 Fed. Appx. 31, 33 (2d Cir. 2015).

A preliminary injunction may either maintain the status quo (a prohibitory injunction) or alter the status quo (a mandatory injunction).  *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018).  Unlike prohibitory injunctions, mandatory injunctions require that Plaintiff meet a heightened legal standard and show "a clear or substantial likelihood of success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (cleaned up).  "An irreparable injury is an injury that is not remote or speculative but actual and imminent, . . . for which a monetary award cannot be adequate compensation," *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (cleaned up), and which cannot be remedied "if a court waits until the end of trial to resolve the harm," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (cleaned up).

## IV.   <u>Discussion</u>

I begin with a jurisdictional analysis for all claims because a "court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).  Although Federal Defendants have not yet responded to the Amended Complaint, I will also consider claims

against them because I may sua sponte dismiss those claims that lacks jurisdiction.  *See Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir. 2000) ("failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte").  I find that Plaintiff has not established personal jurisdiction for any defendant.  I also find that Plaintiff has not established subject matter jurisdiction for his Second Amendment claim.

Next, I consider whether Plaintiff has stated a claim upon which relief can be granted against the City Defendants or the Federal Defendants.  Although the Federal Defendants have not yet responded to the amended complaint, "[I] ha[ve] the power to dismiss a complaint sua sponte for failure to state a claim."  *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (citing *Robins v. Rarback*, 325 F.2d 929 (2d Cir. 1963), *cert. denied*, 379 U.S. 974 (1965); *see also Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017).  I find that all claims against Garland, Wray, Williams, Adams, and Sewell (collectively "Individual Defendants") may be dismissed either because they are duplicative of the claims asserted against each of their respective entities or because the individual is not referenced in the Amended Complaint.  I then find that several of Plaintiff's claims must be dismissed because they are brought under criminal statutes that do not provide civil causes of action.  Next, I review Plaintiff's remaining claims and find that all of them fail either because the Plaintiff identifies statutes that do not provide him with substantive rights, or because Plaintiff does not plead sufficient facts to establish a claim.

Next, I find that considering that Plaintiff's claims are unable to survive dismissal, I must also deny Plaintiff's motions for preliminary injunctions.  I further find that for both procedural and substantive reasons, Plaintiff's motions for default judgments fail.  Finally, I address

Plaintiff's motion for Freedom of Information Act data and find that it must be denied because it is not procedurally proper and Plaintiff has not exhausted his administrative remedies.

### A. *Personal Jurisdiction*

#### 1. The City Defendants

The City Defendants argue that the Amended Complaint must be dismissed for lack of personal jurisdiction.  (Doc. 32.)  When a defendant moves to dismiss a claim for lack of personal jurisdiction, the plaintiff must make a *prima facie* showing that jurisdiction exists.  *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018).  The prima facie elements of personal jurisdiction are "(1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with constitutional due process principles."  *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 605 (S.D.N.Y. 2016) (cleaned up).  A plaintiff must plead "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place."  *Chirag v. MT Marida Marguerite Schiffharts*, 604 F. App'x 16, 19 (2d Cir. 2015).

The City Defendants claim that Plaintiff failed to establish the first element of personal jurisdiction due to insufficient service of process.  (Doc. 32, 10–11.)  Rule 4(j)(2) of the Federal Rules of Civil Procedure provides that state or local governmental organizations be served by: "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  Fed. R. Civ. P. 4(j)(2).  New York State Civil Practice Law and Rules ("CPLR") § 311, provides service be made upon the City of New York by delivery "to the corporation counsel or to any person designated to receive process in a writing filed in the office

of the clerk of New York County."  CPLR § 311(a)(2).  Plaintiff sent the Summons and

Amended Complaint to the Corporation Counsel by mail, rather than effectuating personal

service.  (*See* Docs. 15, 17, 20.)  As an alternative, service may be made by first class mail if the

plaintiff sends the defendants a summons and complaint "together with two copies of a statement

of service by mail and acknowledgement of receipt."  CPLR § 312-a(a).  "Service is complete on

the date the signed acknowledgement of receipt is mailed or delivered to the sender.  The signed

acknowledgement of receipt shall constitute proof of service."  CPLR § 312-a.  Plaintiff mailed

the Summons and Amended Complaint but failed to send copies of a statement of service by

mail or acknowledgement of receipt.  Even if an acknowledgement had been sent, there is no

evidence that it was completed and mailed or delivered to Plaintiff.  Accordingly, Plaintiff did

not properly serve the City Defendants.

Plaintiff argues that "[t]he defendants appeared before the Court because the complaint

and summons were properly served, if complaint and summons was not properly served, they

would not have appeared."  (Doc. 33, at 4.)  I interpret this as arguing that by appearing and

filing a motion to dismiss, the City Defendants waived the defense of improper service.  *See*

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*Pro se* pleadings must be

interpreted to rase the strongest claims that they suggest).  This argument fails because actual

notice of a lawsuit does not cure improper service.  *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d

Cir. 2002) ("Nor can actual notice of suit cure a failure to comply with the statutory requirements

for serving process."); *Tung v. Hemmings*, No. 19CV5502RPKSJB, 2021 WL 4147419, at *4

(E.D.N.Y. Sept. 13, 2021) ("actual notice of a lawsuit does not cure improper service.").

Although a party may waive the defense of improper service by failing to promptly assert it, the

City Defendants have not waived the defense.  Here, the City Defendants promptly asserted their

insufficient service defense in a letter filed the same day that they entered their notice of appearance. (*See* Docs. 22–23.)  The City Defendants then reserved their right to assert the defense in their opposition to the Plaintiff's motion for a preliminary injunction, (Doc. 29), and asserted the defense in their motion to dismiss, (Doc. 32).  Because the City Defendants were not properly served and did not waive the defense of improper service, Plaintiff has not established personal jurisdiction.

### 2.  The Federal Defendants

Plaintiff also claims to have served the Federal Defendants, (Doc. 34), but review of his affirmations of service related to the Federal Defendants, (Docs. 14, 16, 18, 21), reveal that none of them were properly served.  As proof of service, Plaintiff filed four affidavits of service on a corporation and screenshots of USPS tracking information.  (Docs. 14, 16, 18, 21.)  None of the Federal Defendants are corporations.  As United States Government agencies or employees, the Federal Defendants are subject to Federal Rule of Civil Procedure 4(i), which provides that:

> To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee . . . . To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Fed. R. Civ. P. 4(i)(2)-(3).  Plaintiff has not filed any proof that he has served the United States in a manner consistent with Rule 4(i)(1).  In addition, the screenshots provided by Plaintiff do not reveal whether the summons and Amended Complaint were even mailed to the Federal Defendants.  (*See, e.g.,* Doc. 18, stating only that "Individual Picked Up at Postal Facility" in Washington, D.C.)  Therefore, Plaintiff has not properly served the Federal Defendants.

Accordingly, because I find that the Defendants were not properly served, and did not waive proper service, I do not have personal jurisdiction over any of the Defendants.  Although "[a] party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation," I decline to give Plaintiff additional time to properly serve the defendants. *Case v. Clivilles*, No. 12-CV-8122 (TPG), 2016 WL 5818577, at *3 (S.D.N.Y. Oct. 4, 2016).  I find that an extension would be futile because Plaintiff's claims fail for myriad other reasons explained *infra*.  *See Maranga v. Abdulmutallab*, 903 F. Supp. 2d 270, 272 (S.D.N.Y. 2012) (refusing to grant extension where it would be futile); *Strickland v. Hongjun*, No. 10 CIV. 5445 MGC, 2011 WL 2671895, at *1 (S.D.N.Y. July 8, 2011), *aff'd sub nom. Drobner v. Bruce*, 531 F. App'x 96 (2d Cir. 2013) (refusing to extend time to effect service where "any extension of time to effect service would simply postpone an eventual dismissal");  *Reich v. City of New York*, No. 19CV6491EKRER, 2021 WL 6423983, at *5 n.6 (E.D.N.Y. Oct. 5, 2021), *report and recommendation adopted*, No. 19-CV-6491(EK)(RER), 2021 WL 5783382 (E.D.N.Y. Dec. 7, 2021), *appeal dismissed*, No. 22-211, 2022 WL 3020931 (2d Cir. July 5, 2022) (dismissing claim for improper service without granting an extension "since the claims should be dismissed for other reasons as well.")

## B.  *Subject Matter Jurisdiction*

Standing is a threshold jurisdictional issue and essential element of subject matter jurisdiction.  *Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 424 (S.D.N.Y. 2021).  "A plaintiff must demonstrate standing for each claim and form of relief sought."  *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).  Establishing standing requires that the plaintiff has suffered an injury, there is a causal connection between the injury and the complained-of conduct, and that it is likely the court can offer a remedy.  *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560–61 (1992).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo,Inc. v. Robins*, 578 U.S. 331, 339 (2016) (citing *Lujan*, 504 U.S. at 555).  The court may dismiss any claim that lacks subject matter jurisdiction.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).  However, "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016).

Plaintiff's claims arising out of his concealed carry license application fail for lack of standing.  Plaintiff has not established an injury, the first element necessary for standing to plead a Second Amendment claim.  Plaintiff submitted his application for a concealed carry license on October 7, 2022.  (Docs. 26 at 4; 28-1 at 2.)  Under New York's firearm licensing statute, "the licensing officer shall act upon any application for a license . . . within six months of the date of presentment."  N.Y. Penal Law § 400.00.  Six months has not passed since Plaintiff filed his application.  Plaintiff's application is still pending and may still be resolved—albeit not necessarily in a way satisfactory to Plaintiff—in a timely manner.

Plaintiff also cannot show causation.  Plaintiff argues that although he fulfills all requirements for NYPD to issue his concealed carry license, the NYPD have "willfully and purposefully" refused to issue the license.  (Doc. 26, at 1.)  Plaintiff further complains that the "NYPD has not stated any reasons to not process" his application.  (*Id.*, at 4.)  Plaintiff does not offer any support that the NYPD has, in fact, refused to process his application.  In fact, the City Defendants have explained that Plaintiff has not appeared in-person to be fingerprinted.  (Doc. 32, at 8–10; Doc. 33, at 6.)  Plaintiff concedes that an NYPD officer requested that he appear in person to be fingerprinted, but he refused, seemingly out of concern that it was a trap setup by

the FBI.  (Doc. 33, at 6.)

Plaintiff claims that the NYPD's review of his application is untimely based on an "emergency gun license policy [that] was implemented by Police Commissioner Keechant L. Sewell and Mayor Eric Adams on August 19, 2022."  (Doc. 26, at 4.)  The policy Plaintiff refers to is an emergency rule adopted by the New York City Police Department following the Supreme Court's ruling in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).  In June 2022, the Supreme Court struck down New York's requirement that an applicant for a firearm license must show a special need for self-protection.  *Id.*  Because New York's new licensing requirements would not be enacted until September 1, 2022, the New York Police Department issued an emergency rule which provides standards for reviewing applications that are pending as of August 31, 2022.  (Doc. 28-2.)  However, Plaintiff's application was submitted after August 31, 2022; therefore, this rule does not apply to it.  In any case, Plaintiff misconstrues the application of this rule and argues that it entitles him to an "expedited application" for "emergency scenarios."  (Doc. 26, at 3.)  This is not correct.  The emergency rule does not provide for expedited treatment of any firearm license applications.  The rule simply provides a licensing standard for applications being reviewed prior to the enactment of new licensing standards that align with *Bruen*.

Because Plaintiff has not suffered an injury related to his gun license application, his first motion for a preliminary injunction must be DENIED.  For the same reasons, Plaintiff's claims against all Defendants under the Second Amendment are DISMISSED without prejudice.

### C.  *Failure to State a Claim*

I now consider whether Plaintiff states a cause of action against any of the Defendants under his non-Second Amendment claims (the "Remaining Claims") so that I can determine

whether the dismissal for lack of personal jurisdiction should be with or without prejudice. Because the Remaining Claims are clearly frivolous, meaning "lack[ing] an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), dismissal shall be with prejudice, *see Black v. Vitello*, 841 F. App'x 334, 336 (2d Cir.), *cert. denied*, 142 S. Ct. 221 (2021) ("Amendment to the complaint would thus be futile, and so we find that the district court did not abuse its discretion in dismissing the case with prejudice."); *Forjone v. Town of Clarendon*, 110 F. App'x 204, 205 (2d Cir. 2004).

### 1. Individual Defendants

Plaintiff brings claims against Adams, Sewell, Garland, and Wray in their official capacities. "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In the Amended Complaint Plaintiff does not allege any involvement of these individuals, beyond the actions of each of their respective employers. "Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (collecting cases); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). Because each of the Individual Defendants' employer entities are also named as Defendants, I find that Plaintiff has failed to state a claim against Adams, Sewell, Garland, and Wray. Further, the Amended Complaint does not mention or refer to Williams or the United States Attorney's Office for the Southern District of New York; therefore, Plaintiff fails to state a claim against Defendant Williams. Accordingly, the Remaining Claims against the Individual Defendants are DISMISSED WITH PREJUDICE.

## 2.  Claims Under Criminal Statutes

Plaintiff's Amended Complaint alleges that "the FBI and NYPD conspire deprivation

rights under 'Color of Law', privileges, or protected by the Constitution or Laws of the United

States, direct violation of 18 U.S. Code § 242," "the FBI and NYPD willfully and negligently

conspire to oppress, deprivation rights, privileges, or protected by the Constitution or Laws of

the United States, direct violation of 18 U.S. Code § 241," the "FBI violated Federal Department

of Transportation Laws, tampering the plaintiff's vehicle to setup the plaintiff to violate NEW

YORK PENAL LAW 170.65, NEW YORK PENAL LAW 170.70, NEW YORK PENAL LAW

170.71," and that the "FBI violated Counterfeiting and Forgery to a vehicle and Counterfeiting

and Forgery vehicle VIN to take advantage of plaintiff violate 18 U.S. Code § 511."  (Am.

Complaint 12–13 (emphasis in original).)  All of these statutes (18 U.S.C. §§ 241, 242, 511; New

York Penal Laws §§ 170.70, 71) are criminal statutes.  "The Supreme Court historically has been

unreceptive to inferring a private right of action from a bare criminal statute, apparently because

criminal statutes are usually designed to afford protection to the general public, as opposed to a

discrete, well-defined group or individual."  *Schlosser v. Kwak*, 16 F.4th 1078, 1083 (2d Cir.

2021) (cleaned up); *see also Nath v. Select Portfolio Servicing, Inc.*, 732 F. App'x 85, 87 (2d Cir.

2018) ("No private right of action exists under criminal statutes absent an indication that

Congress intended to create such a private right of action. . . .").  Nothing in the language of

these statutes suggests an intent to create a private right of action to sustain a claim.  *See Storm-*

*Eggink v. Gottfried,* 409 F. App'x 426, 427 (2d Cir. 2011) (affirming dismissal of claims under

18 U.S.C. §§ 241 and 242 because neither confer a private right of action.); *Solomon v. Hum.*

*Servs. Coal. of Tompkins Cnty., Inc.*, No. 5:11-CV-0226 GTS/ATB, 2011 WL 2160883, at *2

(N.D.N.Y. May 27, 2011).  Accordingly, Plaintiff's claims alleging violations of these statutes

are DISMISSED WITH PREJUDICE.

### 3. Claims Under 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986, and Ninth Amendment

Plaintiff's Amended Complaint states that "the FBI and NYPD willfully and negligently conspire to interfere with civil rights, deprivation rights, privileges, or protected by the Constitution or Laws of the Unites States Also no one shall be subjected to cruel, or degrading treatment, direct violation of 42 U.S. Code.1983, 42 U.S. Code § 1985(3) and Ninth Amendment" and that "the FBI and NYPD neglect to prevent illegal activity or deprivation rights, privileges, or protected by Federal Laws of the United States, direct violation of 42 U.S. Code § 1986." (Am. Complaint 12–13.)   These claims fail because neither the statutory provisions, nor the Constitutional amendment that Plaintiff identifies provides him with the substantive rights that he seeks to protect.

"The Ninth Amendment is not an independent source of individual rights; rather, it provides a rule of construction." *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007) (cleaned up).  42 U.S.C. § 1983 "merely provides a mechanism for enforcing individual rights" that are provided elsewhere.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285, (2002).  "One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Id.* (citing *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, (1979)).  The same is true for 42 U.S.C. § 1985.  *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983).  As Plaintiff fails to state a claim under 42 U.S.C. § 1985, his claim under 42 U.S.C. § 1986 necessarily also fails.  *See White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010); *Wang v. Miller*, 356 F. App'x 516, 519 (2d Cir. 2009).  Accordingly, Plaintiff's claims for violations of the Ninth Amendment and 42 U.S.C. §§ 1983, 1985, 1986 are DISMISSED WITH PREJUDICE.

#### 4. Claims Under Fourth Amendment and Electronic Communication Privacy Act of 1986

Plaintiff's Amended Complaint states that "the FBI willfully and negligently violated FOURTH AMENDMENT ELECTRONIC COMUNICATION PRIVACY ACT of 1986 (ECPA) by monitoring plaintiff's computer to find any reasons to interfere with civil rights, deprivation rights, privileges, or protected by the Constitution or Laws of the United States" and that the "FBI willfully and negligently violated FOURTH AMENDMENT RIGHTS TO PRIVACY by monitoring plaintiff's cell phone calls to setup the plaintiff for arrest and to interfere with privacy and privileges, or protected by the Constitution or Laws of the United States."  (Am. Complaint 13 (emphasis in original).)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend IV.  The ECPA provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States."  18 U.S.C. § 2520(a).  Plaintiff fails to allege sufficient factual material to support either claim.  The only factual allegations Plaintiff offers in support of these claims is that the FBI has investigated him and "monitored [his] email and phone calls." (Am. Complaint 6.)  These conclusory allegations are insufficient to adequately plead a cause of action.  Accordingly, Plaintiff's claims under the Fourth Amendment and ECPA are DISMISSED WITH PREJUDICE.

#### D. *Plaintiff's Second Motion for Injunctive Relief*

The first required element for a preliminary injunction is a demonstration of "likelihood of success on the merits."  *JBR, Inc.*, 618 Fed. Appx. at 33.  Plaintiff's second motion for

injunctive relief is DENIED because given the dismissal of the Amended Complaint, for reasons explained *supra*, there is no likelihood of success on the merits.

### E.  *Plaintiff's Motions for Default Judgment*

Plaintiff's motions for default judgment may be denied based on Plaintiff's failure to properly serve the Federal Defendants explained *supra*.  Further, Plaintiff's motion and revised motion for default judgment are denied because they are improper in form and procedure. Neither of Plaintiff's motions for default judgment abide by Federal Rule of Civil Procedure Rule 55(a), Local Civil Rule 55.1, or my Individual Rules, which require that Plaintiff first obtain a Certificate of Default, then prepare and file an Order to show cause with supporting papers.  Plaintiff's first default motion contains four entirely irrelevant affidavits under the Servicemembers Civil Relief Act with no other evidence to support his motion.  (Doc. 34.) Plaintiff's revised motion for default judgment seeks default against defendants who, pursuant my Order dated March 2, 2023, were granted until April 1, 2023 to respond to the Amended Complaint.  Because Plaintiff failed to follow the procedures for seeking default judgment and he has not properly served the Federal Defendants, his motion is DENIED.

### F.  *Plaintiff's Motion to Obtain Freedom of Information Act Data*

On March 7, 2023, Plaintiff filed a "motion to obtain Freedom of Information Act Data." (Doc. 40.)  In this motion, Plaintiff requests that I "issue an Order to provide Freedom of Information Act data from Federal Bureau of Investigation, United State of Department of Justice, U.S. Department of Homeland Security and other agencies relating to matters on the plaintiff."  (*Id.*, at 1.)  Plaintiff explains that the "Freedom of Information Act data will [sic] used as evidence for the case." (*Id.*, at 3.)  I find that this request is moot in light of my decision to grant the City Defendants' motion to dismiss and sua sponte dismiss all claims against the

Federal Defendants.

Further, Plaintiff's motion is not procedurally proper.  The Freedom of Information Act ("FOIA") provides that "[o]n complaint, the district court of the United States in the district in which the complainant resides . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Plaintiff's complaint does not raise any claims pursuant to the FOIA.  To the extent that Plaintiff's motion may be interpreted as requesting to amend the Amended Complaint to raise such a claim, such a request is also be denied.  "The FOIA provides a cause of action only to a requester who has filed a FOIA request that has been denied." *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 667 (S.D.N.Y. 2010).  After an application is denied, a FOIA applicant "must exhaust administrative remedies by completing the administrative appeal process."  *Sejas v. United States Attorney's Off.*, No. 22-CV-9358 (JPO), 2023 WL 1779642, at *2 (S.D.N.Y. Feb. 3, 2023) (citing 5 U.S.C. § 552(a)(6)(A)(i)-(ii)).  Plaintiff's motion does not describe when he filed a FOIA request, whether his request was denied, when that denial was issued, or if an appeal of that decision was filed.  (*See* Doc. 40.)  Accordingly, Plaintiff's motion to compel FOIA data is DENIED.

### V.    Conclusion

For the reasons stated above, Plaintiff's motions for preliminary injunctions are DENIED, City Defendants' motion to dismiss is GRANTED, and Plaintiff's motions for default judgment and injunctive relief are DENIED.  Further, I sua sponte DISMISS all claims against the Federal Defendants.  Dismissal of all of Plaintiff's claims, except those under the Second Amendment, is WITH PREJUDICE.  Dismissal of Plaintiff's Second Amendment claims is WITHOUT PREJUDICE.

The Clerk of Court is respectfully directed to mail a copy of this order to the *pro se*

Plaintiff, terminate the open motions at Documents 26, 30, 34, and 38–41 and close the case.

SO ORDERED.

Dated:  March 27, 2023
        New York, New York

_____
Vernon S. Broderick
United States District Judge